# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 20-322V

|  |  |
|---|---|
| GEORGE TAYLOR, | Chief Special Master Corcoran |
| Petitioner, |  |
| v. | Filed: June 18, 2024 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for Petitioner.*

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.*

## FACT RULING ON SITUS[1]

On March 23, 2020, George Taylor filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of a Hepatitis A ("Hep A") vaccine administered to him on July 2, 2019. Pet. at 1, ECF No. 1; Am. Pet., ECF No. 28. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find it more likely than not that Petitioner has not established the alleged vaccine administration site. Therefore, his Table SIRVA claim is not tenable and must be dismissed.[3]

## I.   Relevant Procedural History

After initiating his claim, Petitioner filed proof of vaccination (without identifying the arm in which the subject vaccination was administered) and medical records, followed by a statement of completion. ECF Nos. 6-9. In April 2020, Petitioner was ordered to submit a vaccination record that includes the situs of vaccination. Non-PDF Order, docketed Apr. 7, 2020. Five months later, Petitioner submitted a status report detailing his unsuccessful efforts in obtaining any additional vaccine administration records. ECF No. 15. This case was then reassigned to the SPU. ECF No. 16.

In March 2021, Respondent filed a status report with his informal assessment of the claim, identifying missing medical records and factual issues that may require additional development or support in the record. ECF No. 24. Specifically, Respondent reiterated that Petitioner did not file a complete vaccination record, including a notation showing in which arm the subject vaccination was administered. *Id.* at 2. Respondent also noted that it is "not clear" when Petitioner's post-vaccination pain began, because when he sought care at his primary care provider's ("PCP") office on August 2, 2019 (thirty days post vaccination), he did not report right shoulder symptoms. *Id.* (citing Ex. 3 at 141-45). Respondent otherwise did not identify any issues beyond what is normally addressed in SPU. *Id.* at 2-3. On May 11, 2021, Petitioner filed outstanding medical records (including a record of Petitioner's subject vaccination depicting a handwritten, encircled, "left" arm situs),[4] witness affidavits regarding onset and situs, an amended petition, and a statement of completion. ECF Nos. 26-28.

On November 29, 2021, Respondent filed a status report requesting to file a Rule 4(c) Report, and noting that he had not sought a demand from Petitioner. ECF No. 34. That report was filed on January 24, 2022, and in it Respondent argued that Petitioner had failed to show a Table injury because his medical records did not support the conclusion that the onset of his pain occurred within 48 hours of vaccination – in direct conflict with his affidavit. Respondent's Report at 6, ECF No. 36. Respondent also argued that Petitioner's vaccination record stated that the subject vaccination was administered

---

[3] Although the parties submitted briefings on the issue of whether Petitioner's pain occurred within 48 hours of vaccination and whether his limited range of motion could be explained by another condition or abnormality, at this time, this Ruling is limited to a finding of fact regarding situs.

[4] The handwritten circle notation is around the "left" injection site, while simultaneously encircling the "IM" or intramuscular route of vaccine administration. *See* Ex. 8 at 2. This vaccination record was submitted in response to a subpoena issued by Petitioner. *See* ECF No. 13.

in the left arm, not the right as alleged. *Id.* at 7 (citing Ex. 8 at 2). Petitioner's vaccination record thus failed to demonstrate that his pain and reduced range of motion ("ROM") were limited to the shoulder in which the vaccine was administered. *Id.* Finally, Respondent asserted that Petitioner's MRI revealed another condition or abnormality (arthritis in the acromioclavicular joint) that may explain his post-vaccination shoulder symptoms. *Id.* at 8 (citing Ex. 4 at 4-7).

Petitioner subsequently filed an additional medical record and a motion for a ruling on the record regarding the issues raised in Respondent's Rule 4(c) report on September 12, 2022. ECF Nos. 38-39. On November 10, 2022, Respondent filed a response to Petitioner's motion. ECF No. 41. Petitioner filed a reply approximately one month later, on December 7, 2022. ECF No. 43. This matter is now ripe for consideration.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir.

2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8; *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## III. Relevant Factual Evidence[5]

On July 2, 2019, Petitioner (then 54 years old) received a Hep A vaccine in his left deltoid. Ex. 8 at 2. As noted above (and in the reproduction of the vaccine record below), a handwritten circle is evident around both notations for situs ("left") and route ("IM – intramuscular). *See id.*



---

[5] I have reviewed all of the filings submitted by both parties to date. Only those facts relevant to situs will be discussed herein, although other facts may be included as necessary.

Nevertheless, Petitioner attests that he "watch[ed] the pharmacist administer the vaccine into [his] right arm." Ex. 2 ¶ 9. He specifically recalls that the vaccine was injected "into the front portion of [his] right shoulder near the shoulder joint." *Id.* ¶ 10. Upon injection, he "immediately began bleeding and required several bandages" to stop the bleeding. *Id.* By July 4, 2019, Petitioner was "still experiencing severe pain in [his] right shoulder that was not subsiding or improving." *Id.* ¶ 11. At that time, Petitioner states he could not raise his right arm to dress, reach for items on shelves, or drive due to the severe pain. *Id.* "Within the next week," his pain "progressively worsened" (resulting in difficulties with cooking, cleaning, bathing/shaving, and laundry) until he made an appointment with his PCP to address such pain in August 2019. *Id.* ¶¶ 12-13.

One month post-vaccination, on August 2, 2019, Petitioner presented to his PCP to follow-up on medications for pre-existing conditions, his type 2 diabetes, and to discuss weight loss. Ex. 3 at 141. The visit notes for this encounter do not contain reports of shoulder pain. *See id.* at 141-45. Petitioner contends, however, that during this visit, his PCP "noted [Petitioner's] limited ability to use [his] right shoulder and the severity of [his] pain[.]" Ex. 2 ¶ 13. According to Petitioner, his PCP also referred him to an orthopedist at that time. *Id.* While Petitioner relates this interaction to his August 2, 2019 PCP visit, Petitioner, in fact, made such complaints during his September 13, 2019 PCP encounter.

The record in this case also establishes that approximately one month prior to Petitioner's September 13, 2019 PCP visit, on August 20, 2019, Petitioner requested his medical records via Recordtrak. *See,* e.g., Ex. 4 at 27-30. Specifically, he asked that his records be sent *to* Recordtrak, "who are handling a legal matter for [Petitioner]." *See id.* at 29; *see also* Ex. 9 at 3-4. It appears that Recordtrak ultimately provided Petitioner's counsel with the requested medical records. Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 1. More so, and also on August 20, 2019, Petitioner executed a medical records release form, which authorized the disclosure of Petitioner's medical records directly to his counsel. Ex. 8 at 6.

As previously noted, Petitioner returned to his PCP on September 13, 2019. Ex. 3 at 147. The chief complaint was listed as "L shoulder pain" and Petitioner noted that "[t]he problem began 2 months ago[ when he h]ad his second Hep A shot[.]" *Id.* Petitioner reported that his "[s]houlder has slowly gotten more painful[;]" he described difficulties with activities and sleeping and noted that his shoulder would "lock up." *Id.* He explained that when he received the subject vaccination, "it was [administered] over to the side and hurt more than most shots. [He b]led after the shot." *Id.* Despite these notations, the "history of present illness" section includes a note from the PCP stating Petitioner "presents with right shoulder pain." *Id.* An examination revealed "[loss of range of motion ("ROM")] of [the] right shoulder with tenderness to movement. Tenderness to palpation of

anterior shoulder." *Id.* at 149. The PCP's assessment included "shoulder pain, right," and Petitioner was referred to orthopedics. *Id.*

Petitioner then saw an orthopedist on September 26, 2019, for "right shoulder pain." Ex. 4 at 8. Petitioner stated that "the pain started on July 3rd, 2019[,] after he received the second Hepatitis A vaccine[.]" *Id.* He described the pain as "constant and aching . . . located in the anterior aspect of his shoulder over the IM injection site." *Id.* Petitioner noted that "his ROM is limited and causes pain." *Id.* Upon examination, Petitioner exhibited swelling, warmth, tenderness on palpation of the anterior deltoid and bicipital groove, and diminished ROM – all of the right shoulder. *Id.* at 10. An x-ray was ordered, which revealed degenerative changes in the acromioclavicular ("AC") and glenohumeral ("GI")  joints, "with spurring of the humeral head[.]" *Id.* The orthopedist's assessment included: 1) localized primary osteoarthritis ("OA") of both the AC and GI joints in the right shoulder, 2) arthralgia of the right shoulder region, 3) right rotator cuff tendonitis, and 4) a "complication following immunization." *Id.* An MRI was ordered "s/p possible immunization complication." *Id.*

Following Petitioner's October 9, 2019 MRI of the right shoulder, he returned to the orthopedist for a follow-up visit the next day, on October 10, 2019. Ex. 4 at 4. Petitioner reiterated that his right shoulder pain "was not bothering him until he received the Hep A vaccination in July." *Id.* He explicitly stated that his pain "began after his last HEP [sic] A vaccine in July 2019." *Id.* The orthopedist reviewed Petitioner's MRI results and noted it revealed "a small full thickness tear of the distal supraspinatus tendon[,] moderately severe outlet narrowing[,] small rim-rent tears in the infraspinatus tendon[, and] a small full-thickness tear in the subscapularis tendon at the site of insertion." *Id.* at 6. Following this review of Petitioner's MRI, the orthopedist's assessment included: 1) localized primary OA of the right AC joint, and 2) a nontraumatic rupture of the right rotator cuff tendon. *Id.* Petitioner received a steroid injection in his right shoulder[6] and was referred to physical therapy ("PT"). *Id.*

On October 14, 2019, Petitioner attended an initial PT evaluation for "pain in [the] right shoulder." Ex. 6 at 2. Petitioner reported such pain "for some time" with "insidious onset." *Id.* He exhibited right shoulder weakness and decreased active and passive ROM on examination. *Id.* at 2-4. The physical therapist noted that Petitioner had difficulties with reaching, grasping, self-care, and dressing. *Id.* at 4. Petitioner attended a total of 19 PT sessions for his right shoulder symptoms, through January 13, 2020. *Id.* at 4-30.

---

[6] The visit notes for this encounter also note that Petitioner received a "corticosteroid injection, left shoulder." Ex. 4 at 7.

The following month, on February 6, 2020, Petitioner followed up with his orthopedist for "right shoulder pain." Ex. 9 at 6. An examination of the right shoulder showed continued tenderness with palpation of the anterior deltoid and bicipital groove but improved ROM. *Id.* at 7. The orthopedist maintained his assessment of localized primary OA and a nontraumatic rupture of the right rotator cuff tendon. *Id.* at 8. Petitioner received a second steroid injection in the right shoulder. *Id.*

Approximately two years later, on February 10, 2022, Petitioner returned to his orthopedist for "a follow-up evaluation of right shoulder pain." Ex. 14 at 4. Petitioner reported that "he has struggled with pain after an IM HEP C [sic] vaccine in 2019." *Id.* He also reported that his right shoulder symptoms had worsened since his last steroid injection. *Id.* Following a physical examination, the orthopedist maintained his previous assessment and Petitioner received a third steroid injection in the right shoulder. *Id.* at 6-7. Although right shoulder surgery was recommended, the medical records do not contain additional complaints of right shoulder pain. *Id.* at 7.

Petitioner submitted witness affidavits in support of his claim. Of note, Petitioner's friend, Robert G. Sammons, attests that "[i]n July 2019," Petitioner told him that "he had a Hepatitis vaccine in early July 2019 and that his shoulder was in a lot of pain from the vaccination." Ex. 12 ¶ 5. Mr. Sammons attests that Petitioner came to visit him in "mid-July of 2019 shortly after his vaccination" and Petitioner "described the ongoing pain in his right arm." *Id.* ¶ 6. Mr. Sammons states that Petitioner showed him "exactly where the needle was inserted on his right arm, which was pretty high up on the right shoulder." *Id.* According to Mr. Sammons, Petitioner told him that his "pain had not diminished in any significant capacity since the vaccine administration and appeared to be progressively worsening." *Id.* ¶ 7.

Additionally, a friend and neighbor of Petitioner's, Donna Cox, attests that she "saw [Petitioner] the day he received the vaccine and when [she] did[, she] was quite worried for him because he was immediately complaining about the pain in his shoulder." Ex. 13 ¶ 3. Petitioner explained to Ms. Cox that "the vaccine was administered at an angle and caused him an instantly overwhelming amount of pain." *Id.* ¶ 8. Ms. Cox states that Petitioner showed her the site of vaccination, "which was high on his right shoulder . . . . Blood was continuing to bubble out from under the Band-Aid on his right shoulder, and his right shoulder was very warm to the touch." *Id.* ¶ 4. According to Ms. Cox, "[t]he following morning," Petitioner also told her that "his shoulder felt extremely stiff[.]" *Id.* ¶ 5. Over the course of "the following days and weeks," Ms. Cox observed Petitioner "guarding his right shoulder to protect it, and [he] couldn't do anything with that right shoulder." *Id.* ¶ 6. No additional affidavit evidence has been submitted.

IV.     **Findings of Fact regarding Situs**

While the first vaccination record submitted by Petitioner is silent as to situs, the subsequent and complete vaccine administration form depicts (in a handwritten entry) that the subject vaccination was administered in his *left* arm – a fact unhelpful to Petitioner. *Compare* Ex. 1, *with* Ex. 8 at 2.

In response, Petitioner contends that it is relevant that the original vaccination record – lacking pertinent information as to situs – was generated on February 28, 2020, at 9:57am. Petitioner's Motion at 16 (citing Ex. 1). According to Petitioner, however, in response to a federal subpoena, the pharmacy subsequently supplied the same vaccine administration record on November 16, 2020, which contained additional information as to site in the "For Internal Use Only" section. *Id.* (citing Ex. 8 at 2); Petitioner's Reply at 5.

In particular, Petitioner contends that the pharmacy wrote on the record that was produced as Exhibit 1 and, in formulating Exhibit 8, added in the manufacturer, lot number, expiration date, signature of the administrator, and circled the route and situs of vaccine administration. Petitioner's Motion at 17 (citing Ex. 8 at 2-4). Petitioner thus questions whether the information in Exhibit 8 is "authentic" and why it was not included nine months earlier in Exhibit 1. Petitioner's Reply at 5-6. Petitioner further argues it is "unclear" if the "left" was circled for injection site or route of administration. Petitioner's Motion at 17; Petitioner's Reply at 6. Nonetheless, Petitioner proposes, as Exhibit 8 was created nearly eight-to-nine months post vaccination, it is unreliable and should be given little weight, especially in light of the remaining record evidence supporting right arm situs. Petitioner's Motion at 17 (citing Ex. 2; Ex. 12; Ex. 13).

On the other hand, Respondent asserts that Petitioner lacks evidence showing the pharmacy altered the original vaccine administration record at some time in 2020, to add in the situs of vaccination and other pertinent information related to the vaccination. Respondent's Response at 11, n.5. Respondent argues that a "more rational and reasonable explanation" is that the vaccine consent form (Exhibit 1) was scanned before Petitioner received the subject vaccination and the administrator filled in the form after Petitioner was vaccinated on July 2, 2019 (resulting in Exhibit 8). *Id.* In support, Respondent notes that Exhibit 8 was signed by the administrator and dated July 2, 2019; thus it should be awarded appropriate weight. *Id.*

In my experience with SIRVA cases (over 2,000 within SPU since my appointment as Chief Special Master, additional cases handled within chambers, and review of opinions issued by other special masters), I have found it often to be the case that information regarding the vaccine administration site is incorrect – especially information

contained in *computerized* records, which may feature a 'dropdown' menu which may not be updated each time a separate vaccine is administered.[7] Thus, although such records are unquestionably the first-generated documents bearing on issues pertaining to situs, they are not per se reliable simply *because* they come first – and in fact the nature of their creation provides some basis for not accepting them at face value. But information which requires *specific action* on the part of the vaccine administrator (often at the very time of administration), such as a handwritten notation on a printed form, generally warrants more significant weight.[8]

Such handwritten notations can be rebutted of course, by additional, case-specific evidence and circumstances. For instance, in one case a petitioner's history of vaccination and subsequent injury in the same shoulder was medically documented just 13 days post-vaccination, and consistently thereafter. That petitioner also explained that she requested vaccination in her non-dominant arm. *Rizvi v. Sec'y of Health & Hum. Servs.*, No. 21-0881V, 2022 WL 2284311 at * 3 (Fed. Cl. Spec. Mstr. May 13, 2022). In another more recent matter, the petitioner's history was medically documented 23 days post-vaccination, and in numerous later records. And the site notation was found on "an otherwise haphazardly-completed form (containing entries listed diagonally and not in the allotted space)" – constituting a specific reason to doubt the record's reliability. *Toothman v. Sec'y of Health & Hum. Servs.*, No. 22-0207V, 2024 WL 2698520, at *4 (Fed. Cl. Spec. Mstr. Apr. 19, 2024).

Here, while Petitioner has questioned the accuracy of the handwritten notation on the vaccine administration record – maintaining that it was completed sometime after February 2020, and thus should receive less weight – Petitioner has failed to produce any *specific* evidence in support of his argument. For example, Petitioner has not submitted evidence describing when the second form was allegedly *completed* (which is often separate and distinct from when the form was generated), whether it was completed at a different time from the original July 2019 vaccination consent form, or if the second submission is even the same document/vaccine consent form originally submitted – with alterations by the pharmacy.

---

[7] *See, e.g.*, *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977, 2021 WL 1940435, at *2 (Fed. Cl. Spec. Mstr. Apr. 19, 2021); *Desai v. Sec'y of Health & Hum. Servs.*, No 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Hum. Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018).

[8] *See, e.g.*, *Schmidt v. Sec'y of Health & Hum. Servs.*, No. 17-1530V, 2021 WL 5226494, at *8 (Fed. Cl. Spec. Mstr. Oct. 7, 2021); *Marion v. Sec'y of Health & Hum. Servs.*, No. 19-0495V, 2020 WL 7054414 at *8 (Fed. Cl. Spec. Mstr. Oct. 27, 2020).

Additionally, Petitioner's argument that the vaccine administration form is unclear, as it contains a circle around the route of administration while simultaneously circling the site, is not persuasive. The vaccine administration form, although encircling notations for both situs and route, is not so haphazardly executed as to cast doubt upon its clarity and reliability. *See Toothman,* 2024 WL 2698520, at *4. Rather, it is credible that the vaccine administrator intended to circle both entries at the same time. Thus, the handwritten vaccine administration record in this case has *some* facial reliability (albeit slight) that Petitioner has not persuasively undermined.

I acknowledge that the subsequent medical records from approximately two months post-vaccination and thereafter are consistent with Petitioner's claim that the vaccine was administered in his right shoulder. *See,* e.g., Ex. 3 at 147. However, such reports are not based on any medical provider's personal knowledge of the site of Petitioner's vaccine administration. Rather, they were created later in time, and thus likely represent Petitioner's own report of situs to his treating physicians. While I have previously and often found that a petitioner's subsequent, consistent reports to treaters regarding situs, paired with the appropriate treatment of the alleged shoulder in which the subject vaccine was administered, can overcome a conflicting vaccination record,[9] I do not find the same to be true here. Indeed, Petitioner's reports regarding situs appear to have been made only after he was in contact with or had retained legal counsel in conjunction with his vaccine-injury claim. *See,* e.g., Ex. 4 at 27-30 (showing that Petitioner had signed a medical records release form, releasing his medical records to counsel on August 20, 2019, approximately one month prior to Petitioner's first mention of vaccine-related right shoulder pain to a treating physician). Thus, Petitioner's reports to his treaters are not sufficient to overcome the handwritten vaccination record in this case. I therefore find that the subject Hep A vaccination was more likely than not administered in Petitioner's left deltoid.

### Conclusion and Order to Show Cause

The factual finding of a left-sided vaccine administration renders the claim of a right-sided SIRVA untenable. *See* 42 C.F.R. § 100.3(c)(10)(iii) (providing that a SIRVA is limited to "the shoulder in which the intramuscular vaccine was administered"). Petitioner's Table SIRVA claim is therefore **DISMISSED.**

It is therefore unnecessary to resolve whether Petitioner's shoulder pain began within the 48-hour post-vaccination timeframe that would be required for a Table SIRVA claim or whether Petitioner's condition could be explained by another condition or

---

[9] *See,* e.g., *Toothman,* 2024 WL 2698520, at *4.

abnormality. 42 C.F.R. §§ 100.3(a), (c)(10)(ii), (iv); Respondent's Response at 13-16 (challenging these criteria).

Instead at this stage, the remaining question is whether any off-Table, causation-in-fact claim might be feasible. *See generally* Amended Petition (alleging only a Table SIRVA); *but see* Petitioner's Motion at 19 (requesting the opportunity to obtain an expert report to address whether another condition or abnormality may be present to explain Petitioner's condition). Respondent's briefing and my preliminary review of the evidence has identified a potential alternative cause for the injury discussed herein. Therefore, Petitioner will be afforded one brief and final opportunity to determine whether he would like to pursue any remaining causation-in-fact claim centering on an injury in the non-vaccinated shoulder/arm. However, Petitioner may not formally retain an expert, or order any expert's written report, without prior consultation with Respondent and the Court. Any request for experts, when combined with this case's age, would likely support the case's transfer out of SPU for further proceedings.

Petitioner's failure to respond to this or other orders issued in this action, as well as failure to file evidence required to support his claim, will be interpreted as a failure to prosecute resulting in dismissal of Petitioner's claim. *Tsekouras v. Sec'y of Health & Hum. Servs.*, 26 Cl. Ct. 439 (1992), *aff'd*, 991 F.2d 810 (Fed. Cir. 1993) (per curiam); *Sapharas v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b).

**Accordingly, within 30 days, by no later than Thursday, July 18, 2024, Petitioner shall show cause why his claim should not be dismissed for insufficient proof of causation-in-fact.**

In the alternative, if Petitioner wishes to exit the Vaccine Program, counsel shall file the appropriate motion, Stipulation, or Notice. *See* http://www.uscfc.uscourts.gov/sites/default/files/autism/EXITING_GUIDANCE_TO_PRO_SES.pdf.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master